**Etta Jane BROWN, Individually, and on behalf of all others similarly situated, Plaintiffs-Appellees,**

v.

**LIBERTY LOAN CORPORATION OF DUVAL, and S. Morgan Slaughter, as Clerk of the Circuit and County Courts of Duval County, Florida, Defendants,**

**State of Florida, Intervenor-Appellant.**

No. 75–1460.

United States Court of Appeals, Fifth Circuit.

Oct. 6, 1976.
Rehearing Denied Nov. 12, 1976.

Robert L. Shevin, Atty. Gen., Dept. of Legal Affairs, Civ. Div., Thomas A. Harris, Asst. Atty. Gen., Tallahassee, Fla., for intervenor-appellant.

Steven M. Goldstein, Fla. State Univ., Tallahassee, Fla., for plaintiffs-appellees.

Frank X. Friedmann, Jr., Jacksonville, Fla., for Liberty Loan Corp., Etc.

Before WISDOM and MORGAN, Circuit Judges, and LYNNE, District Judge.

WISDOM, Circuit Judge:

The State of Florida appeals from a district court's declaratory judgment holding §§ 77.01, 77.03, and 222.12, Florida Statutes,[1] unconstitutional as violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution insofar as they permit the postjudgment garnishment of an individual's wages without first providing that individual with notice of and an opportunity for a hearing to contest the propriety of the garnishment. This holding must be reversed as an erroneous application of constitutional principles to the statutory scheme in question. Before dealing with the constitutional issue, we set forth the salient facts and discuss the preliminary issues relating to mootness, three-judge courts, and abstention. Our decision on the merits makes it unnecessary for us to consider the appellant's contention that the class certified by the district court was overinclusive as to persons who have already had their wages garnished and their claim to exemption determined or who may have their wages garnished in the future.

I.

INTRODUCTION

On July 13, 1973, a judgment in the amount of $646.03 was entered in the Duval County Court, Florida, in favor of Liberty Loan Corporation (Liberty) against Etta Jane and her husband, Saul F. Brown. Twelve days later, upon Liberty's motion, S. Morgan Slaughter, the Clerk of the Circuit and County Courts of Duval County, issued a writ of garnishment pursuant to §§ 77.01 and 77.03. The writ required Etta Jane Brown's employer to withhold a portion of her wages. Brown did not receive actual or constructive notice of the institution of the

1. Sections 77.01 and 77.03, Fla.Stat.Ann. (Supp. 1975–76), provide:

77.01 *Right to garnishment*
Every person who has sued to recover a debt or has recovered judgment in any court against any person, natural or corporate, has a right to writ of garnishment, in the manner hereinafter provided, to subject any debt due to defendant by a third person, and any tangible or intangible personal property of defendant in the possession or control of a third person. The officers, agents and employees of any companies or corporations are third persons in regard to the companies or corporations, and as such are subject to garnishment after judgment against the companies or corporations.
77.03 *Writ; procurement after judgment*
After judgment has been obtained against defendant but before the writ of garnishment is issued, the plaintiff, his agent or attorney, shall file a motion (which shall not be verified or negative defendant's exemptions) stating the amount of the judgment and that movant does not believe that defendant has in his possession visible property on which a levy can be made sufficient to satisfy the judgment. The motion may be filed and the writ issued either before or after the return of execution.

Section 222.12, Fla.Stat.Ann. (1967), provides:
222.12 *Proceedings for exemption*
Whenever any money or other thing due for labor or services as aforesaid is attached by such process, the person to whom the same is due and owing may make oath before the officer who issued the process that the money is due for the *personal labor and services of such person; and he is the head of a family residing in said state.* When such an affidavit is made, notice of same shall be forthwith given to the party, or his attorney, who sued out of process, and if the facts set forth in such affidavit are not denied under oath within two days after the service of said notice, the process shall be returned, and all proceedings under the same shall cease. If the facts stated in the affidavit are denied by the party who sued out of process within the time above set forth and under oath, then the matter shall be tried by the Court from which the writ of process issued, in like manner as claims to property levied upon by writ of execution are tried, and the money or thing attached shall remain subject to the process until released by the judgment of the court which shall try the issue.

garnishment proceedings before or at the time of service of the writ of garnishment on her employer. On the day the writ was served, Brown filed an affidavit of exemption pursuant to § 222.12, stating that she was the head of a family residing in Florida and that the money attached was for personal labor and services. The following day, July 27, 1973, Liberty filed an affidavit denying the affidavit of exemption. After a hearing on August 10, 1973, the county court found that Brown qualified for the § 222.12 exemption and dissolved the writ of garnishment.

On August 9, 1973, one day before the writ of garnishment was dissolved, Brown brought a class action in federal district court alleging that §§ 77.01 and 77.03, and the actions of Liberty and S. Morgan Slaughter taken under those sections violated her due process rights. The complaint requested declaratory relief. She later amended the complaint adding § 222.12 to those already challenged and including a prayer for money damages. At this time the district court permitted the State of Florida to intervene as a party-defendant.

After pre-trial motions, the case was tried on stipulated facts. The district court entered a declaratory judgment in favor of the class plaintiffs and awarded money damages to Brown. The original defendants, Liberty and Slaughter, have not appealed that decision.

## II.

### MOOTNESS

The appellee, Etta Jane Brown, contends that this action is moot. She points to the promulgation of an administrative order by the Circuit Court of the Fourth Judicial District of Florida which is designed to bring Duval County's postjudgment garnishment procedures in line with the constitutional requirements implicit in the district court's declaratory judgment. Brown also notes that the original defendants, Liberty and Slaughter, have not appealed. Finally, she observes that the class plaintiffs consisted only of residents of Duval County who were or might be subject to garnish-

ment proceedings. Drawing from these circumstances, Brown concludes that the essential controversy in this case is limited to Duval County in all respects and is now extinguished.

■ An actual case or controversy must exist, of course, when a suit is instituted and at all stages of appellate review in order to avoid mootness. *See De Funis v. Odegaard*, 1974, 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164, 170; *McDonald v. Oliver*, 5 Cir. 1976, 525 F.2d 1217, 1225. The posture of this case on appeal convinces us that the underlying controversy is still alive.

■ The unpersuasiveness of Brown's argument is evident in her mischaracterization of the purported reach of the district court's declaratory judgment. The contention that this judgment affects only the postjudgment garnishment procedures of Duval County ignores the district court's holding that §§ 77.01, 77.03, and 222.12 are facially unconstitutional. Those provisions were not invalidated only insofar as they apply or are carried out in Duval County. Although the state and its officers are not enjoined from enforcing these provisions, the state's interest in seeking appellate review is patently concrete and non-trivial. It vigorously contests the correctness of the district court's decision and seeks a reversal that will allow its statute to stand untainted. The basic state interest is in having its enactments reconciled with federal constitutional requirements.

We find that a continuing controversy exists in this case. Brown has obtained a declaratory judgment and money damages by successfully attacking the constitutionality of *state* statutes. The State of Florida, a proper party-defendant, seeks to defeat that judgment by obtaining a reversal on several issues, including the constitutional one. The battle lines are drawn.

## III.

### THREE–JUDGE COURT

The state offers two grounds which would make unnecessary a decision on the

merits. It contends first that 28 U.S.C. § 2281 required the empanelling of a three-judge court in this case. That statute provides as follows:

> An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

The appellant's argument that § 2281 is applicable rests upon the premise that the declaratory judgment rendered by the district court has virtually the same effect as a formal injunction under the facts of this case. Florida notes that the class plaintiffs include all Duval County residents who may have their wages garnished in the future under the contested garnishment procedure. That factor and the non-availability of a "good faith" defense to civil rights liability on the part of a clerk of a county or state circuit court in the wake of the district court's decision assertedly combine to restrain enforcement of the statutory post-judgment garnishment scheme in the same manner as an injunction would. Florida urges that this kind of interdiction by a single judge of statutes of state-wide application is the precise harm Congress intended to prevent by enactment of § 2281.

It is argued by Florida that the case law bearing on this question is unsettled. Florida concedes that *Kennedy v. Mendoza-Martinez*, 1963, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644, and *Whatley v. Clark*, 5 Cir. 1973, 482 F.2d 1230, held, respectively, that a three-judge court was unnecessary for the determination of a constitutional challenge to a federal or state statute when only declaratory relief was requested. But it contends that neither the Supreme Court nor this Court has specifically held that such a suit seeking only declaratory relief would never require a three-judge court.

We are cognizant of the Supreme Court's reservation of the issue "[w]hether an action for declaratory relief would under all circumstances be inappropriate for consideration by a three judge court" in *Mendoza-Martinez*, 372 U.S. at 154, 83 S.Ct. at 560, 9 L.Ed.2d at 652. In *Sands v. Wainwright*, 5 Cir. 1973, 491 F.2d 417, 422 (en banc), *cert. denied, Guajardo v. Estelle*, 1974, 416 U.S. 992, 94 S.Ct. 2403, 40 L.Ed.2d 771, we remarked that a three-judge court is generally not required when only declaratory relief is sought. The implicit opening for later litigants to test the contours of possible exceptions to the general rule was thus created.

■ The appellant urges us to view the declaratory judgment rendered in this case as having a sufficiently injunctive effect to necessitate the convening of a three-judge court. We feel constrained, however, to reject that suggestion. The authority of *Sands* is an obstacle the appellant fails to surmount.[2] Although it is true that the Supreme Court in *Mendoza-Martinez* dealt with declaratory relief in the context of a challenge to a *federal* statute and the requirement for convening a three-judge court under 28 U.S.C. § 2282, we expressly endorsed in *Sands, see* 491 F.2d at 422, the view of the Second Circuit that an action seeking declaratory relief against a state regulatory scheme would not require a three-judge court. *See* 491 F.2d at 422, citing *Nieves v. Oswald*, 2 Cir. 1973, 477 F.2d 1109, 1115 n. 15. The approval of *Nieves* in *Sands* may be read as a dismissal

---

2. In our recent formulation of the four threshold criteria for invoking the three judge provisions of § 2281, *Holt Civic Club v. City of Tuscaloosa*, 5 Cir. 1975, 525 F.2d 653, 655, we did not intimate any relaxation of the *Sands* requirements.

Section 2281 is not applicable unless (1) a state statute with state-wide applicability is challenged, (2) an "officer of such state" is sought to be restrained, (3) injunctive relief is sought, and (4) there is a substantial question as to the validity of the statute under the Federal Constitution.

of the principal argument advanced by Florida in this case. Had the prison officials in *Nieves* continued to impose severe punishments on inmates under state authority without procedural safeguards they might have been liable in damages for civil rights deprivations. That possibility did not deter the *Nieves* or *Sands* courts from endorsing a reading of § 2281 which does not mandate use of the three-judge court procedure when declaratory rather than injunctive relief is sought. *See Gerstein v. Pugh*, 420 U.S. 103, 109, n.10, 95 S.Ct. 854, 43 L.Ed.2d 54.

Our conclusion is further buttressed by an examination of the congressional policy manifest in the enactment of § 2281 and its companion provision, § 2282, which affects suits challenging federal statutes. "[T]hese sections were enacted to prevent a single federal judge from being able to paralyze totally the operation of an entire regulatory scheme, either state or federal, by issuance of a broad injunctive order." *Kennedy v. Mendoza-Martinez*, 372 U.S. at 154, 83 S.Ct. at 560, 9 L.Ed.2d at 653. *See* Currie, *The Three-Judge District Court in Constitutional Litigation*, 32 U.Chi.L.Rev. 1, 13–20 (1964). The appellant fails to show how the relief requested and obtained by Brown has this effect. The co-defendant, Slaughter, does not have the responsibility for issuing writs of garnishment throughout the state. And, the declaratory judgment obtained against Slaughter does not suggest how it is to be carried out or even that it need be effectuated. Additionally, it has not been used to obtain an injunction restraining even Slaughter, let alone court clerks in other Florida counties, from enforcing the contested garnishment procedure.

The appellant's final suggestion that potential liability for damages under 42 U.S.C. § 1983 effectively halts the enforcement of these garnishment provisions is unpersuasive. A federal district court's declaratory judgment holding state statutes unconstitutional in an action between residents of a single county does not automatically signal the death knell of the state-wide application of the statutes by clerks of county courts. Court clerks throughout the state may or may not decline to enforce the contested provisions while the declaratory judgment is appealed. *Cf. Kennedy v. Mendoza-Martinez*, 372 U.S. at 155, 83 S.Ct. at 560, 9 L.Ed.2d at 653. Thus, any effect that potential civil rights liability may have on state-wide application of the postjudgment garnishment provisions is merely incidental and contingent. These circumstances are not the ones sought to be avoided by Congress when it enacted § 2281. We of course express no view in this opinion about the necessity of a three-judge court in an action seeking nominal declaratory relief when the plaintiff's request in some fashion amounts to a prayer for full injunctive relief.

## IV.

## ABSTENTION

Florida presents several other plausible arguments that might prevent us from reaching the due process question. It contends that abstention is required under the doctrine of *Railroad Commission of Texas v. Pullman*, 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, because there are two possible interpretations of the statutory provisions establishing the garnishment exemption, i. e. §§ 222.11[3] and 222.12. The seemingly absolute prohibition against the issuance of writs of garnishment affecting the wages of exempted persons in § 222.11 is, in Florida's view, patently inconsistent with § 222.12 which provides the means of enforcing this prohibition only *after* a writ of garnishment has issued. The appellant believes that either of two possible resolutions of this ambiguity would alter the federal question before the district court.

3. Section 222.11, Fla.Stat.Ann. (1961), provides:

    222.11 *Exemption of wages from garnishment*

      No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state, when the money or other thing is due for the personal labor or services of such person.

Florida contends that the construction of these provisions most consistent with the state legislative intent is that the garnishment exemption becomes effective only after the writ attaches to the wages of a head of a Florida family and the wage earner has claimed the exemption. It asserts that a state court is likely to adopt this construction thereby changing the constitutional question presented to the district court. In Florida's view that question would become whether due process requires that a judgment debtor receive notice and an opportunity for a hearing before the issuance of a writ of garnishment to determine if the debtor is entitled to an exemption that *does not exist* until after the writ is issued and the debtor has claimed it. Florida contends that two courts which have considered this precise question have decided that due process does not impose these requirements. *See Langford v. Tennessee,* W.D.Tenn.1973, 356 F.Supp. 1163, and *Raigoza v. Sperl,* Ct.App.1973, 34 Cal.App.3d 560, 110 Cal. Rptr. 296.

The construction favored by the appellant is essentially the one given by the district court. Section 222.11 provides that no writ of garnishment shall issue to interfere with the receipt of wages by the head of a family residing in Florida. Its companion, § 222.12, withholds the means of enforcing the right to the exemption until after wages are garnished. The district court read these provisions as meaning that a judgment debtor may not assert the exemption until after wages are garnished. Florida characterizes this construction as implying that the wage earner has a right to an exemption that exists before but cannot be enforced until after the actual garnishment. It contrasts this reading with what the state believes is the correct view, i. e. that the debtor's right to an exemption does not *exist* and cannot be exercised until after garnishment.

The distinction Florida makes as to the time of existence of the exemption appears pointless. The courts in *Langford* and *Sperl* did not attempt to ground their upholding of the respective statutes' constitu-

tionality on the fact that the exemption did not exist until after levy or garnishment. The essential factor in *Langford* and *Sperl,* as well as in this case, is that the statutory exemption preventing the creditor from reaching certain property of the debtor is not enforceable until after the property is levied upon or garnished. The various plaintiffs object to having their property at least temporarily transferred to another party or frozen in the employer's hand before the opportunity to apply for the exemption is provided. It is the absence of pre-levy or pregarnishment notice and opportunity for a hearing regarding the exemption that is challenged. The constitutional question therefore is unchanged by the time at which the exemption comes into existence.

A second construction of the exemption provisions that Florida suggests is that the absolute prohibition in § 222.11 against the issuance of a writ of garnishment to attach the wages of the head of a Florida family supercedes the postgarnishment exemption procedure in § 222.12 and requires that the wage earner have an opportunity to assert the exemption before issuance of a writ of exemption. The appellant argues that this construction is possible in view of the treatment of analogous state provisions in *Mathis v. Purdy,* Cir.Ct. Dade Cty. 1974, 40 Fla. Supp. 17. The *Mathis* court held that a judgment debtor is entitled to an opportunity to claim the $1000 personal property exemption provided by Article X, § 4(a)(2) of the Florida Constitution of 1968 before a creditor may levy against the debtor's property under § 222.06, *Florida Statutes. See Gibson v. Atlantic Nat. Bank of Jacksonville,* Cir.Ct. Duval Cty., No. 74–7076, March 5, 1975. Florida contends that since only a post-levy opportunity to assert an exemption is provided by the explicit statutory provisions in this case, a similar construction of § 222.12 is predictable thereby eliminating the constitutional issue before us.

*Mathis,* however, is entirely unsupportive of Florida's argument. That case was decided on the grounds that Article X, § 4(a)(2) of the Florida Constitution would

not be effectuated unless § 222.06 was construed to allow a judgment debtor to file an affidavit of exemption before a creditor levies upon exempt property and that due process of law also requires this procedure. Since the state constitutional ground is not involved in this case, however, the sole remaining reason to construe § 222.12 as requiring pregarnishment notice and an opportunity for a hearing on the exemption is the federal constitutional ground. But abstention by a federal court is not required when it amounts to a deferral to a state court to apply federal constitutional law to a state statutory scheme. *See Wisconsin v. Constantineau,* 1971, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515, 520. Thus, in view of our agreement with the district court's conclusion that the plain language of § 222.12 authorizes initiation of the exemption procedure only after garnishment, we find no basis in state law for a construction of the garnishment exemption provisions which might obviate a decision on the due process question.

■ The final abstention argument is that the principles of equity, comity, and federalism require federal courts to avoid interference with litigation in state courts. Florida cites as its support the line of cases following *Younger v. Harris,* 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and *Samuels v. Mackell,* 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688. It stresses particularly, *Huffman v. Pursue,* 1975, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482, which extended the *Younger* requirements for federal court injunctive intervention in a state court criminal proceeding to state civil nuisance actions. The appellant, however, fails to show how the district court in this case interfered unduly with any pending state judicial proceedings.

When the federal suit was commenced on August 9, 1973, Etta Jane Brown had already filed an affidavit claiming her statutory garnishment exemption. Because Lib-

erty filed an affidavit denying her claim of exemption, a state court hearing was set for August 10, 1973. After the hearing, the county court found that Brown qualified for the exemption and ordered the writ of garnishment dissolved. Thus, Brown successfully obtained her exemption from garnishment one day after the federal court suit was filed.

Although federal courts may not ordinarily interfere with state court actions that are "closely akin" to state criminal proceedings, *see MTM, Inc. v. Baxley,* 5 Cir. 1975, 523 F.2d 1255, 1257, abstention in this case was not necessary to preserve important state interests. Florida does not demonstrate that the due process question could properly have been raised during the statutory exemption hearing. Moreover, use of that forum for this purpose is questionable. Brown only had to show that she qualified for the exemption during the hearing on August 10th in order to have the writ of garnishment dissolved. Any other showing or argument was superfluous. The fact that the state proceeding was pending for only one day after the federal action was filed hardly conjures a picture of undue federal interference with state judicial proceedings. The exemption proceeding was completed long before the district judge rendered the declaratory judgment that stirs this controversy. Viewed against this background, abstention was unnecessary.

## V.

### DUE PROCESS OF LAW

The district court held that §§ 77.01, 77.-03, and 222.12 violate due process of law insofar as they authorize the postjudgment garnishment of an individual's wages without first providing notice and an opportunity for a hearing to contest the propriety of the garnishment.[4] The court examined the governmental and private interests that are operative in this case. First, it concluded

---

4. The Florida statutory prejudgment provisions, §§ 77.031, 77.04, and 77.06 *et seq.,* Fla. Stat.Ann. (1964 and Supp. 1975–76), were held to violate due process in *Bunton v. First National Bank of Tampa,* M.D.Fla.1975, 394

F.Supp. 793. Those provisions did not provide for notice to the debtor. The writ of garnishment was issuable on the unsworn motion of the plaintiff or the plaintiff's attorney during the course of litigation.

that the garnishment of wages is a disfavored government function. Here the court relied largely on the congressional findings enunciated in the Consumer Credit Protection Act of 1968, 15 U.S.C. § 1671, *et seq.* Second, it found that the judgment debtor's interests in notice and an opportunity for a hearing on the garnishment exemption are substantial. The court noted that the temporary deprivation of wages may work a hardship on the low income wage earners who are most likely to have their wages garnished. Next, it observed that there is a risk that the garnishment procedure will be utilized against wage earners whom a creditor knows qualifies for the exemption. Finally, the court felt that a significant possibility exists that an employer will discharge an employee whose wages are garnished in order to avoid the administrative burden related to carrying out the garnishment.

■ The district court's analysis, however, does not weigh all of the pertinent interests. For instance, it does not consider the state's interest in facilitating the enforcement of judgments obtained in its courts or the creditor's interest in satisfying a judgment from a debtor's assets. Given proper weight, those interests appear to outweigh the debtor's interests. We hold therefore that due process of law does not require notice and an opportunity for a hearing on entitlement to the exemption before wages are garnished in accordance with Florida law.

■ In seeking a reversal of the district court's decision, Florida contends that due process is satisfied in instances of postjudgment garnishment of wages, because notice and an opportunity for a hearing are given before the entry of the judgment upon which the writ of garnishment is issued. Adequate notice is assertedly given by the judgment and foregoing proceedings which serve to alert the judgment debtor that statutory means of enforcing the judgment may be used by the creditor. The appellant argues that the holding of *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.,* 1924, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288, provides undiminished support for this proposition.[5] And, it suggests that further notice is given when the judgment debtor's wages are actually withheld pursuant to a writ of garnishment. Florida also argues that an opportunity for a hearing is afforded both in the proceedings underlying the judgment and in the hearing for dissolution of the garnishment which may be obtained after wages are garnished. The appellant urges that these opportunities for a hearing compare favorably with those approved by the Supreme Court in *Mitchell v. W. T. Grant Co.,* 1974, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406, and thus do not violate due process of law.

The appellee urges an affirmance of the district court's decision on the ground that the balancing of interests conducted by the court[6] demonstrates that due process of

---

5. The appellant also urges that the Supreme Court's summary affirmance in *Moya v. DeBaca,* 1969, 395 U.S. 825, 89 S.Ct. 2136, 23 L.Ed.2d 740, *aff'g,* D.N.M.1968, 286 F.Supp. 606, requires reversal of the district court's holding in this case. Although the *Moya* issue is virtually identical to the one we face here, summary affirmances by the Supreme Court may not create binding precedents. *See Edelman v. Jordan,* 1974, 415 U.S. 651, 670–71, 94 S.Ct. 1347, 1359–60, 39 L.Ed.2d 662, 676–677. Moreover, there are significant differences between the state garnishment provisions, on their face and as applied, in *Moya* and in this case. Those differences may conceivably result in the adjudication of varying due process requirements.

6. The district court relies heavily on *Coe v. Armour Fertilizer Works,* 1915, 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027, for the proposition that procedural due process applies to postjudgment proceedings. *See* 392 F.Supp. at 1038 and n.12. But this general proposition, although valid, *does not reveal the specific procedures required by due process.* In *Coe* a Florida statute authorized a judgment creditor of a corporation to levy on the property of a corporate stockholder if the corporation's assets would not satisfy the judgment. The Court held that notice and an opportunity for a hearing must be provided to the third party stockholder in order to permit that person to challenge the judgment or to assert personal defenses before the levy occurs. Those circumstances are distinguishable from this case

law requires notice and an opportunity for a hearing before a postjudgment garnishment of wages occurs. Brown also contends that the precedential value of *Endicott-Johnson* is negligible in view of the holding of *Griffin v. Griffin,* 1946, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635, and the procedural due process analysis adopted by the Supreme Court in later cases.

We do not share the appellee's evaluation of the effect of *Griffin* upon *Endicott-Johnson.* In *Endicott-Johnson* the Supreme Court rejected the contention that due process requires notice and an opportunity for a hearing before a creditor obtains a writ of garnishment issued after judgment to reach the wages of the judgment debtor. The Court stated that:

> [T]he established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment.

266 U.S. at 288, 45 S.Ct. at 62. The Court reasoned that notice upon commencement of a suit is adequate to give a judgment debtor advance warning of later proceedings undertaken to satisfy a judgment.

Since the majority opinion in *Griffin* does not mention *Endicott-Johnson,* we do not benefit from a reconciliation of their holdings by the Supreme Court. In *Griffin* the plaintiff-wife sought to enforce in the District of Columbia a 1938 New York judgment for support arrearages based on a 1926 New York alimony decree against her former husband. The 1938 judgment was obtained in an *ex parte* proceeding without notice to the husband. A 1936 New York judgment for arrearages based on the same

alimony decree had apparently remained unsatisfied. In the proceedings leading to that judgment the husband was given notice and appeared unsuccessfully to contest the amount of the award claimed and to assert his inability to make the support payments. *See* 327 U.S. at 223, 66 S.Ct. at 558.

The Supreme Court held that the 1938 judgment was invalid because of an absence of notice to the extent that it cut off the husband's defenses with respect to arrearages occurring after those adjudicated in the 1936 judgment. This rationale, of course, arguably conflicts with the *Endicott-Johnson* Court's premise that notice in the underlying action (in *Griffin* the divorce and alimony proceedings) adequately alerts a party that further action may be taken to enforce a judgment.[7] It is indeed possible to view these cases as dealing with essentially the same question, i. e. whether due process requires notice before any judicial proceedings or actions are undertaken to enforce a judgment,[8] but giving different answers.

We are unable to say, nonetheless, that *Griffin* entirely undercuts the *Endicott-Johnson* holding. The *Griffin* Court carefully distinguished between enforcement of a judgment obtained with notice and an opportunity for a hearing and enforcement of a judgment rendered without those elements. *See* 327 U.S. at 233–34, 66 S.Ct. 556. The Court states that to the extent the 1938 judgment, obtained without notice, is based on the 1936 judgment, rendered after a contested hearing for which the husband received notice, there is no due process violation. Resorting in part, it seems, to the *Endicott-Johnson* rationale, the Court states that: "[d]ue process does not require that notice be given before confirmation of rights theretofore established

where the person subject to execution is the defendant in the underlying proceeding rather than merely a corporate stockholder who may be unaware of the judgment or even of the initiation of the litigation leading to it.

**7.** *See* D. Dunham, *Post-Judgments Seizures: Does Due Process Require Notice and*

*Hearing?,* 21 S.Dak.L.Rev. 78, 81–82 (1976); see case comment on *Brown v. Liberty Loan Corp.,* M.D.Fla.1974, 392 F.Supp. 1023, 3 Fla. St.U.L.Rev. 626 (1975).

**8.** *See id.* at 82.

in a proceedings of which adequate notice was given." *Id.*

The instant case, however, cannot be decided on the ground that the creditor's right to satisfaction of a judgment out of the debtor's assets is merely "confirmed" by the issuance of a writ of garnishment without further notice to the debtor. More recent decisions of the Supreme Court establish the need to balance various interests in order to determine whether due process requires notice and an opportunity for a hearing whenever an individual is to be deprived of property permanently or temporarily. *See North Georgia Finishing, Inc. v. Di-Chem., Inc.,* 1975, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751; *Mitchell v. W. T. Grant Co.,* 1974, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406; *Fuentes v. Shevin,* 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556; *Sniadach v. Family Finance Corp.,* 1969, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349.

■ There is no question that in this case Brown was deprived of use of a portion of her wages until the writ of garnishment was dissolved after the August 10th hearing. Brown's property interest in her wages is similar to that of the defendant whose wages were garnisheed in *Sniadach* before judgment was obtained. Moreover, the garnishment exemption procedure provided by Florida law establishes a mechanism with which a judgment debtor can avoid execution against individual wages by meeting several conditions.

Thus, the earliest possible notice and opportunity for a hearing on the exemption advances the judgment debtor's interest.

If, for example, the debtor were to know of the contemplated garnishment and obtain a hearing shortly after the writ issues, an actual deprivation of wages, possibly those payable at bi-monthly or monthly intervals, might be averted.

When this kind of property interest [9] is at stake, we must closely analyze the competing governmental and individual interests to learn what due process requires. *See North Georgia Finishing,* 419 U.S. at 610, 95 S.Ct. 719 (Powell, J., concurring); *Goldberg v. Kelly,* 1970, 397 U.S. 254, 263–66, 90 S.Ct. 1011, 25 L.Ed.2d 287. *See also Thurston v. Dekle,* 5 Cir. 1976, 531 F.2d 1264. The district court conducted this evaluation, we feel, without weighing certain relevant factors.

In finding that garnishment is a disfavored governmental function, the district court referred to the Supreme Court's treatment of prejudgment garnishment of wages in *Sniadach* and the policies supporting enactment of subchapter II of the Consumer Credit Protection Act of 1968, 15 U.S.C. § 1671, *et seq.* The *Sniadach* Court observed that the garnishment of wages may impose severe hardships on wage-earning families. *See* 395 U.S. at 341–42, 89 S.Ct. 1820. Federal legislation in this area serves to mitigate those hardships and to prevent abuses of wage garnishment procedures by creditors. *See* 15 U.S.C. § 1671.

The district court's characterization of garnishment procedures, however, overlooks the basic validity of state procedures which facilitate "creditor recovery through the

9. It can also be argued that the express language of § 222.11 creates an entitlement or lawful expectation that the wages of certain Florida residents will never be garnished. *See* 3 Fla.St.U.L.Rev. 626, 643 (1975). The post-garnishment exemption procedure of § 222.12, however, may at least temporarily deprive such a person of that entitlement. The Supreme Court's decision in *Arnett v. Kennedy,* 1974, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (Powell, J., concurring in part and concurring in the result in part) (White, J., concurring in part and dissenting in part) (Marshall, J., dissenting), provides, therefore, an alternative basis for balancing private and governmental interests to determine what due process of law

mandates. There, six Justices accepted the view that statutory procedures which deprive persons of entitlements must satisfy due process standards. The presence of a statutory entitlement in this case provides a link between creditor-debtor cases, *e. g., Sniadach, Fuentes, Mitchell,* and *North Georgia Finishing,* and statutory entitlement cases, *e. g., Goldberg v. Kelly,* 1970, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; *Board of Regents v. Roth,* 1972, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Arnett; Goss v. Lopez,* 1975, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725, and *Mathews v. Eldridge,* 1976, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. It does not however affect our analysis or result.

provision of garnishment remedies". *See North Georgia Finishing v. Di-Chem.*, 419 U.S. at 610, 95 S.Ct. at 724 (Powell, J., concurring in the judgment). Every state provides for the legal satisfaction of judgments obtained in its courts by allowing creditors to avail themselves of a variety of forms of execution upon judgment debtors' assets. The abuse of some of these procedures, particularly wage garnishments, can, nonetheless, be recognized without rendering all garnishment procedures illegitimate.

Neither the holding in *Sniadach* nor the congressional policies underlying federal limitations on state garnishment procedures permit us to characterize the Florida postjudgment garnishment scheme as entirely disfavored. The legal issue in *Sniadach* and the legislative history of subchapter II (Restrictions on Garnishment) discussed in the majority opinion concern specifically the harms attendant to prejudgment garnishments. *See* 395 U.S. at 340–42, 89 S.Ct. 1820. Even in the prejudgment context wage garnishments are not necessarily devoid of any relation to a legitimate state interest. To the extent the procedural due process requirements, such as those specified in *Sniadach,* and the restrictions contained in subchapter II are met, a state may legitimately authorize the use of prejudgment to advance state policies. Similarly, postjudgment wage garnishment procedures may be authorized by a state to facilitate the enforcement of judgments if they satisfy the requirements of applicable federal legislation and the U. S. Constitution.

Alongside the state interest in facilitating the enforcement of judgments lies another interest of large dimension. The exemption of the wages of the head of Florida households from garnishment serves to protect low income debtors from the necessity of seeking public assistance. *See Elvine v. Public Fin. Co.,* Fla.3d Dist.Ct.App.1967, 196 So.2d 25, 26; 3 Fla.St.U.L.Rev. 626, 641. Even the temporary garnishment of wages, of course, will detract from the fulfillment of this legislative goal when the result of garnishment is the economic immobilization of an otherwise self-supporting household.

The private interests that are operative in this case are those of the judgment creditor and the judgment debtor. Unlike the prejudgment creditor, the creditor here has a judicially-awarded judgment that evidences the defendant's debt. Thus, its interest is not the freezing of debtor assets pending adjudication of an alleged debt. Instead, it is the enforcement of the judgment against those assets. This factor sharply distinguishes prejudgment from postjudgment garnishment cases. As a result, the *Sniadach* holding that notice and an opportunity for a hearing must precede a prejudgment garnishment of wages does not directly apply here.

The discussion to this point identifies a creditor interest in enforcement of a judgment that is patently weightier than a prejudgment creditor's interest in freezing debtor assets to insure enforcement of a judgment that may never issue. A judgment creditor ordinarily wishes first to reach a debtor's liquid assets, such as accrued wages or bank accounts. Execution against this kind of asset may provide a speedier satisfaction of a judgment than repossessing used consumer goods pursuant to a security agreement or initiating procedures for a court-supervised sale of the debtor's property would offer.

The appellee contends, however, that giving notice and an opportunity to assert the garnishment exemption before wages are frozen creates a minimum inconvenience to the judgment creditor. Brown argues that the procedure now in effect in Florida's Fourth Judicial Circuit [10] which requires pregarnishment notice to the debtor shows the lack of injury to creditors' interests. This argument is partially persuasive. Under the contested procedures, to the extent judgment debtors obtain successfully the wage exemption, any wages received by the creditor or frozen through the garnishment must be paid to the debtor-wage earner.

---

**10.** Adoption of this procedure was ordered by the Chief Judge of the Fourth Judicial Circuit in response to the declaratory judgment of the district court in this case.

The creditor's interests are, nonetheless, advanced significantly by garnishment before notice and an opportunity for an exemption hearing. Although many Florida wage earners will presumably qualify for the exemption, some judgment debtors will not meet the statutory criteria. Pre-notice garnishment may reach wages that are not ultimately determined to be exempt either because the judgment debtor does not file for the exemption or because that person files unsuccessfully for it.

In these instances the creditor may freeze a portion of the debtor's wages in the possession of the employer or may actually obtain them in whole or partial satisfaction of a judgment. By having an employer hold a portion of accrued wages pending resolution of garnishor-garnishee issues, the creditor creates a secure debtor resource that may be reached eventually. Whether the debtor discontinues employment to avoid wage garnishment, changes employers to delay garnishment of future wages, or simply maintains a job with the garnished employer bears little on the immediate procedural advantage provided the judgment creditor by the Florida garnishment scheme. The creditor identifies and preserves its rights in a readily dispersed debtor resource.

Accrued wages that are actually paid to the judgment creditor by the employer-garnishee on the other hand, are available for the creditor's immediate use. In this circumstance an additional creditor advantage is the fact that inflation does not operate to diminish the actual value of the portion of a judgment that is satisfied, at least temporarily, from the debtor's wages.[11]

In sum, the creditor's interests are advanced substantially by the present Florida postjudgment garnishment provisions.

Balanced against these state and creditor interests are the judgment debtor's interests in the use of accrued wages that may be garnished before there is an opportunity to apply for and to obtain the statutory exemption. The district court assessed the portion of disposable income that can be garnished under 15 U.S.C. § 1673[12] as having a vital importance to the class of wage earners most susceptible to wage garnishment. *See* 392 F.Supp. at 1032.

Another debtor interest relates more closely to the entitlement aspect of this exemption. As the district court noted, wage garnishment may result in discharge of the debtor from employment since 15 U.S.C. § 1674 does not prohibit an employee's discharge when a wage garnishment is the result of more than one indebtedness. *See* 392 F.Supp. at 1033.

There are indeed two features of the Florida garnishment scheme which diminish the protection afforded to the debtor's interests. First, state law does not require that a creditor seeking a writ of garnishment attest under oath that the debtor is *not* entitled to the statutory exemption.[13] This omission increases the chance that a wrongful wage garnishment will occur. *Cf. Mitchell v. W. T. Grant Co.*, 416 U.S. at 615–18, 94 S.Ct. 1895.

Second, the debtor is entitled to relief against wrongful garnishment under Flori-

**11.** Inflation may decrease the actual value of a judgment over the period of time it remains unsatisfied. Monetary assets, such as bank accounts or wages, are therefore in a sense "depreciable items". It may be correct to assume, however, that the diminution in the actual value of monetary assets will be less ordinarily than that of consumer goods over a short period of time.

**12.** The amount subject to garnishment is the lesser of 25 percent of weekly disposable earnings or 30 times the federal minimum hourly wage. *See Phillips v. General Finance Corp.*, Sup.Ct.Fla.1974, 297 So.2d 6 (15 U.S.C. § 1673

preempts Fla.Stat. §§ 77.01 and 77.06 with respect to the maximum amounts that can be garnished.).

**13.** A Florida appellate court held in *Noland Co. v. Linning*, 1st Dist. 1961, 132 So.2d 802, that a *writ of garnishment cannot issue unless the judgment creditor affirmatively alleges in its affidavit that the object of the garnishment is not exempt from garnishment. See Virginia Mirror Co. v. Hall*, Fla.2d Dist.Ct.App.1965, 181 So.2d 6 (wage garnishments). The Florida legislature eliminated this requirement in 1967. *See* § 77.03, Fla.Stat.Ann. (Supp. 1975–76).

da law only when the creditor has maliciously sought a writ of garnishment knowing that the debtor's wages are exempt.[14] This burden of proof does not facilitate the operation of an effective debtor remedy for wrongful garnishment of wages.

In spite of these deficiencies we feel compelled to hold that due process of law does not require notice and an opportunity for a hearing *before* the writ of garnishment issues. There are several aspects of the Florida postjudgment garnishment provisions which on balance appear to provide a measure of protection for the judgment debtor that satisfies due process requirements.

Perhaps the most significant factor is the apparent availability of prompt judicial determination of the debtor's claim of exemption. In this case Brown filed an affidavit of exemption on the same day the writ of garnishment was served on her employer. Liberty Loan had two days within which to file an affidavit denying Brown's qualification for the exemption, but did so in one day. A hearing on the exemption issue was held about two weeks after the writ was served on Brown's employer. The court found that Brown qualified for the exemption and the writ of garnishment was dissolved. A judgment for the amount garnished with interest was entered against Liberty Loan.

The district court correctly observed that the exemption provision does not expressly require an immediate hearing on the exemption issue. The exemption procedure, however, appears to be expeditious.[15] Once the affidavit of exemption is filed, the judgment creditor has only two days to contravene it by filing a sworn affidavit. If the creditor fails to take that action, the writ of garnishment is dissolved automatically. Furthermore, neither the district court nor the appellee contend that there is an extended delay in setting the hearing on the exemption in state courts. There was no such delay here.

The timing and meaningfulness of the judicial determination of the exemption issue is of course dependent on the debtor's awareness of the need to apply for the exemption. Although the kind of notice provided in the proceedings leading to the underlying judgment is not itself notice of the later garnishment activity, it serves at least to alert the debtor that further legal action may be taken to satisfy the judgment. Since the debtor is alerted to this possibility, the significance of actual notice of the issuance of the writ of garnishment carries a lesser significance. When the writ of garnishment issues and the garnishee pays over a portion of the debtor's accrued wages to the judgment creditor, the debtor has notice effectively that garnishment has occurred.

Admittedly, this is not actual notice of garnishment. Taken together, however, these two elements of the Florida garnishment procedures allow the debtor to apply for the exemption in a manner which reduces substantially any economic or personal injury. The debtor who qualifies for the exemption may only be deprived temporarily of about one-quarter of weekly disposable income. And, once the debtor successfully obtains the exemption, future garnishment of wages is precluded entirely. Finally, the debtor has a measure of protection against discharge because of federal legislation prohibiting discharge on account of a garnishment arising from a single indebted-

---

14. *See Strickland v. Commerce Loan Co. of Jacksonville,* Fla., 1st Dist.Ct.App.1963, 158 So.2d 814.

15. The district court stressed the potential delay in *filing* for the exemption caused by the lack of official notice to the judgment debtor of the issuance of the writ of garnishment. *See* 392 F.Supp. at 1035. The possibility exists that the resolution of garnishor-garnishee issues will proceed during a period when the debtor does not know of the garnishment, i. e., before

wages are withheld. The damage from the related delay in filing for the exemption is, however, limited. Until wages are withheld, the debtor is not deprived of property. The remaining possible damage to the debtor is that the garnishment will cause discharge even before wages are withheld. As explained below, this danger is diminished by the partial protection afforded by federal legislation and by the practical actions which a judgment debtor has reasonable cause to pursue.

ness. The judgment debtor who may have wages garnished because of multiple debts can obtain further protection from discharge by arranging with the employer to receive immediate notice of service of a writ of garnishment in order that an affidavit of exemption can be filed immediately. This is not full protection against the danger of discharge, but neither is it insubstantial.

Another factor is the absence of a requirement in the wage garnishment exemption provisions that the debtor post a bond before seeking dissolution of the writ of garnishment. In *North Georgia Finishing, Inc.,* the need for the debtor to post a large bond before contesting the prejudgment garnishment of its bank account increased substantially the debtor's interest in pre-garnishment notice and an opportunity for a hearing. *See* 419 U.S. at 607, 95 S.Ct. 719. The judgment debtor under the Florida provisions is unimpeded by such barriers to application for the wage garnishment exemption. Indeed, application for the exemption is an uncomplicated procedure involving the filing of a simple affidavit.

A final consideration here is the importance in the postjudgment garnishment context of the unsworn motion that is acted upon by a court clerk who causes the writ of garnishment to issue. In *Mitchell,* the fact that the writ of sequestration could be issued only by a judicial officer upon the creditor's sworn pleadings which alleged non-conclusionary facts weighed heavily in the Court's decision that due process was not violated. *See* 416 U.S. at 616–20, 94 S.Ct. 1895. Here, however, one essential fact necessary for issuance of the writ of garnishment is entirely conclusionary, as well as being subject to documentary proof. It is merely that a judgment has been entered against the debtor. There is no question that the debtor is being placed at "the unsupervised mercy of the creditor and court functionaries" as to the underlying debt. *See id.* at 616, 94 S.Ct. 1895.

The point remains, nonetheless, that the judgment creditor's writ-initiating, unsworn motion need not deny the debtor's

eligibility for the exemption by alleging specific facts which are reviewed by a judicial officer. This is a substantial defect in the Florida provisions. Use of the procedures approved in *Mitchell* in place of the Florida provisions might reduce the incidence of wrongful garnishment of the wages of exempt persons. *But cf. Mitchell v. W. T. Grant Co.,* 416 U.S. at 632–33, 94 S.Ct. 1895 (Stewart, J., dissenting opinion). We recognize this deficiency, but conclude that it has a smaller significance with respect to the Florida postjudgment garnishment provisions than it had in *Mitchell* and *North Georgia Finishing, Inc.*

In sum, we have considered relevant case law and have conducted the balancing analysis called for in this adjudication of due process requirements. Although there are credible arguments supporting the positions of the opposing parties, we feel constrained to hold that due process of law is satisfied by the contested Florida postjudgment garnishment provisions.

The judgment of the district court is therefore REVERSED and the case is REMANDED for proceedings, not inconsistent with this opinion.