Virginia HARRIS, Plaintiff,

v.

George BAILEY, Sheriff, et al., Defendants.

Civ. A. No. 81–0001–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Nov. 15, 1983.

D. Brock Green, Charlottesville, Va., for plaintiff.

Dennis G. Merrill, Asst. Atty. Gen., Richmond, Va., James M. Bowling, Deputy County Atty., Charlottesville, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

### I. PROCEDURAL HISTORY OF THE CASE

Plaintiff, Virginia Harris, a Social Security recipient, proceeding *in forma pauperis,* filed this action seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to invalidate the post-judgment garnishment procedures permitted by Va.Code §§ 8.01–511 to 525 (1977 & Supp.1983) as violative of the due process and supremacy clauses of the United States Constitution. She named as defendants the Clerk of the Court and Sheriff of Albemarle County as well as the Attorney General of Virginia. Jurisdiction is conferred upon this court by virtue of 28 U.S.C. §§ 1343(3) and (4). Mrs. Harris' action for declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202, and Fed.R.Civ.P. 57. Mrs. Harris' action for injunctive relief is authorized by 28 U.S.C. § 2202 and Fed.R.Civ.P. 65.

This court earlier dismissed Mrs. Harris' class action request and dismissed the Attorney General of Virginia as a party defendant, 521 F.Supp. 562; additionally, the court held that her individual action was moot because her garnisheed social security benefits had been returned to her. The Court of Appeals, 675 F.2d 614 for the Fourth Circuit, however, reversed this latter dismissal, finding that there was indeed a justiciable controversy with respect to Mrs. Harris under the "capable of repetition, yet evading review" doctrine of

*Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The case was remanded for Mrs. Harris to pursue her claim individually. This court then granted the Commonwealth of Virginia's petition to intervene as a defendant in this suit. Subsequently, the plaintiff and the Commonwealth filed cross motions for summary judgment. Oral argument on these motions was heard on December 22, 1982. The case is therefore ripe for disposition.

### II. FACTUAL BACKGROUND

Mrs. Harris is a sixty-seven year old widow living in Albemarle County. In August, 1980, according to her affidavit, her only source of income was Social Security benefits in the amount of $222.60 per month. She avers by affidavit that the Social Security benefits in her bank account in 1980 were used to meet her daily living expenses, including food, fuel, transportation, and medical care. The Social Security benefits were sent by check directly to Mrs. Harris who then deposited the check in her checking account at Central Fidelity Bank in Charlottesville. On May 29, 1980, the University of Virginia Hospital ("Hospital") obtained a judgment of $439.33 against Mrs. Harris in the General District Court for the County of Albemarle. In order to satisfy this judgment against Mrs. Harris, the Hospital on August 18, 1980, instituted garnishment proceedings against her. The Hospital, pursuant to Va.Code §§ 8.01–511 and 512 (1977) swore out a garnishment summons directing the garnishee, Central Fidelity Bank, to withhold from Mrs. Harris the sums in her checking account and to appear on the return date of November 20, 1980, to answer the garnishment summons. This summons was served on both the garnishee bank and Mrs. Harris. The bank was served on August 20, 1980; Mrs. Harris was served six days later on August 26, 1980. On or about August 25, 1980, the bank wrote Mrs. Harris informing her that she could not use the money in her bank account. Mrs. Harris states in her affidavit that at

this point she was forced to borrow money from her children in order to meet her daily living expenses. At about the same time, the bank sent to the defendant Clerk the balance of Mrs. Harris' account. On November 20, 1980, Mrs. Harris' attorney moved in the General District Court for Albemarle County to quash the garnishment under the authority of 42 U.S.C. § 407 which exempts Social Security benefits from state garnishment proceedings. An evidentiary hearing on the motion, set for January 5, 1981, was continued by consent of counsel until January 19, 1981; meanwhile, on January 16, 1981, the state garnishment action was settled and the garnisheed sum returned to Mrs. Harris, a full five months after her bank account was first seized and her Social Security benefits placed beyond her reach for her basic living necessities.

## III. ISSUES

█ Mrs. Harris filed this suit challenging the constitutionality of the post-judgment garnishment procedures on January 2, 1981. She claims first that the procedures violate due process, alleging that the post-judgment garnishment scheme fails to provide timely and effective notice and a prompt opportunity for a hearing. Second, she challenges the state garnishment procedures on the ground that the scheme impermissibly interferes with 42 U.S.C. § 407, the exemption from garnishment for Social Security benefits, and thus violates the supremacy clause, U.S. Const. art. 6, cl. 2. The court will address these issues *seriatim*.

### A. Due Process

The Virginia garnishment provisions permit a judgment creditor to execute its lien, obtained by delivery of the writ of *fieri facias* to the sheriff, on intangible property of the debtor, such as a bank account, by presenting to the Clerk of the Court a "suggestion". The judgment creditor swears out a garnishment summons that must be delivered to both the garnishee and the debtor. *See* Va.Code §§ 8.01–501,

511. The summons is returnable within ninety days. *Id.* § 8.01–514. The form of the summons is set out in Va.Code § 8.01–512.3. This summons must reprint Va. Code § 34–29, which sets forth exemptions from *wage* garnishment. *Id.* No procedure specifically applicable to garnishment of bank accounts, however, is included. The garnishee can respond to the summons by paying the amount due to the court. *Id.* § 8.01–520. It may respond simply by filing a verified statement of the debt it owes the judgment debtor. *Id.* § 8.01–515. Or it may respond by appearing in person and being examined under oath. *Id.* No provision of the garnishment procedures provides the judgment debtor with an opportunity for a mandated hearing in which to challenge the garnishment.

No one disputes that Mrs. Harris had the type of property interest in the Social Security benefits that must be afforded the protection of due process of law. *See Brown v. Liberty Loan Corp.*, 539 F.2d 1355, 1365 n. 9 (5th Cir.1976), *cert. denied*, 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977). The issue in dispute, rather, is how much process is due debtors when creditors garnish potentially exempt property. Mrs. Harris contends that the line of United States Supreme Court cases dealing with due process in regard to prejudgment creditors' remedies should be applied to post-judgment remedies as well. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In sum, these four cases stand for the proposition that, with regard to prejudgment provisional remedies, due process in all but extraordinary situations requires prior notice to the debtor and a prompt opportunity to be heard. The defendant argues that these four cases are inapplicable to post-judgment procedures, relying heavily on a Supreme Court case decided a half century before *Sniadach* and its prog-

eny's due process analysis. In *Endicott Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), the Court held that notice and a hearing are not required under the due process clause in post-judgment proceedings. The Court reasoned that adequate notice and opportunity for a hearing are given by the judgment and foregoing proceedings that alert the debtor that statutory means of enforcing the judgment may likely be used against him. *Id.* at 288, 45 S.Ct. at 62.

This court observes that *Endicott* did not deal with post-judgment seizure of *exempt* property, at issue in this case. *See Finberg v. Sullivan*, 634 F.2d 50, 56–57 (3rd Cir.1980) *(en banc)*. Furthermore, the four recent Supreme Court cases, while dealing with pre-judgment rather than post-judgment remedies, indicate a strong shift away from the narrower due process approach of *Endicott*. Finally, the distinction relied on by the defendant between pre- and post-judgment seizure of a debtor's assets is not crucial; the fact that a judgment has already been rendered in favor of a creditor only represents an adjudication of Mrs. Harris' liability to the Hospital on the underlying debt. The judgment does not entitle the Hospital to any particular assets of Mrs. Harris out of which satisfaction can be made. *See Finberg*, 634 F.2d at 58; *Simler v. Jennings*, 50 U.S.L.W. 2470 (S.D.Ohio 1982).

Consequently, this court holds applicable to a post-judgment deprivation of property the recent Supreme Court cases that balance the various interests of the creditor, the debtor, and the state in order to determine the amount of due process required. The factual holdings of *Sniadach, Fuentes, Mitchell,* and *Di-Chem* suggest that the pre-judgment seizure of an asset is constitutional only if there exist adequate safeguards that limit the occurrence of erroneous deprivations and allow the debtor the opportunity for a prompt correction of an erroneous deprivation. In the post-judgment setting, the balance of interests indicates that adequate notice to the debtor of garnishment of a bank account is required; similarly, the opportunity for a prompt post-seizure hearing is constitutionally required.

The Courts of Appeals for the Third and Fifth Circuits addressed the issue of how much process is due by a state's post-judgment garnishment procedures. In *Finberg*, an *en banc* decision of the Third Circuit held the Pennsylvania garnishment scheme constitutionally deficient for failing to provide prompt post-seizure adjudication of claims of exemption from garnishment and for failing to require that the debtor be informed of the exemptions. The *Finberg* court, dealing with an elderly widow whose Social Security benefits were garnisheed, balanced the competing interests, such as the creditor's interest in enforcement of the judgment debt and the debtor's interest in continued use and possession of her property. *See Finberg*, 634 F.2d at 58. The court concluded that the debtor's interest in a bank account containing Social Security benefits which constitute her means of purchasing the basic necessities of life becomes compelling. *Id.* The court considered as well the state's interest in the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail". *Id.*, quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). While not binding on this court as a precedent, the factual pattern in *Finberg* is so essentially identical to the fact pattern in the case at bar that this court finds the reasoning of the majority opinion in *Finberg* strongly persuasive.

In *Brown v. Liberty Loan Corp.*, 539 F.2d 1355 (5th Cir.1976), *cert. denied*, 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977), the Fifth Circuit applied a similar balancing test but came to a contrary conclusion. *Brown* held constitutional a Florida post-judgment garnishment statute. *Brown* may be distinguished from *Finberg*, however, and indeed from the case at bar, by noting that *Brown* involved only the temporary deprivation of a small, garnishable portion of a debtor's wages. Only

twenty-five percent of the debtor's weekly disposable income was garnishable. *Brown*, 539 F.2d at 1367 n. 12. In contrast, both the debtor in *Finberg* and Mrs. Harris were deprived of their bank accounts containing exempt Social Security benefits that supplied the basic necessities of life. In the balancing test, then, the debtor's interests in *Finberg* weighed far more heavily than in *Brown*.

The court now turns to the balance in this case. The competing interests recognized in both *Finberg* and *Brown* include the creditor's interest in a prompt and inexpensive satisfaction of the judgment already awarded. The creditor, here the Hospital, has the right to seek recovery from Mrs. Harris' property. Moreover, the creditor must be protected from the dissipation of the debtor's assets by a debtor bent on depriving the creditor of his due. A hearing *before* the garnishment would severely prejudice this interest. In addition, the creditor has an interest in a procedure that keeps him from garnishing exempt property. For example, during the five months before the garnisheed Social Security benefits were returned to Mrs. Harris, the Hospital perhaps failed to look to other, non-exempt assets of Mrs. Harris to satisfy its judgment.

The debtor, of course, has an interest in the continued use of his or her assets. Mrs. Harris depended on the Social Security benefits in her garnisheed bank account for the very necessities of life, such as food, shelter, and health care. Mrs. Harris was forced to rely on her children for these necessities; many others in her situation might well be required to turn to the state welfare system. As the *Finberg* court reasoned, this debtor interest is compelling. *Finberg*, 634 F.2d at 58.

A balance of these two interests must be made. In addition, the court must consider the burden on the state and the creditor imposed by any additional procedural requirements. An accommodation of the interests in this case indicates that Virginia's post-judgment garnishment scheme fails to meet due process requirements, according to the *Finberg* analysis. The creditor's need for the proceeds from property that may well be exempt from garnishment is less compelling than Mrs. Harris' need for use of the bank account for daily necessities. Procedures designed to assure the creditor that the property will be available later if it is determined to be nonexempt will adequately protect the creditor and yet provide the debtor adequate protection against the erroneous deprivation of exempt property. *See* Greenfield. *A Constitutional Limitation on the Enforcement of Judgments—Due Process and Exemptions*, 1975 Wash.U.L.Q. 877, 911. Furthermore, the requirement of a prompt post-garnishment hearing protects the creditor against long delays in determining the exempt status of a debtor's seized assets, thus facilitating the creditor's search for non-exempt assets for satisfaction of the judgment.

A review of the Virginia post-judgment garnishment procedures demonstrates several deficiencies. First of all, while Va. Code § 8.01–511 clearly provides for notice to the debtor, the statute provides no requirement that this notice be served on the debtor in a timely manner. The statute simply states that a copy of the garnishment summons "shall be served on the judgment debtor". *Id.* In this case, the notice was not served on Mrs. Harris until six days after service on the garnishee bank. Indeed, nothing in § 8.01–511 proscribes even more delay in notice to the debtor. In order to meet the timely notice requirements of due process, the creditor should be required to provide the debtor with notice simultaneously with or within a reasonable time after the garnishment.

Second, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), provides that notice must be "calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections". The Virginia procedure in § 8.01–512.3 only provides notice of the garnishment itself; the summons served on

the debtor provides information regarding wage exemptions but does not mention any other possible exemptions, nor does it notify the debtor of a procedure for asserting any exemptions. As the court held in *Finberg*, due process requires that the garnishment summons include some information on possible exemptions as well as the process for contesting the garnishment. *See Finberg*, 634 F.2d at 62; *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13–15, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978) (public utility's service termination notices failed to satisfy due process because notices did not inform customers of process for contesting terminations). In *Finberg*, the court required notice to the debtor of the exemption for Social Security benefits and a $300 cash exemption provided under Pennsylvania law; the court did not address other possible exemptions "[b]ecause Mrs. Finberg did not claim other exemptions". *Finberg*, 634 F.2d at 62. Certainly, actual notice of *all* available exemptions is not likely to increase the probability of the debtor's correcting an erroneous deprivation. Such a potentially confusing laundry list is not required by due process. *See Id.* at 82 (Aldisert, J., dissenting). The complex myriad of state and federal exemptions therefore is not required to be set out on the summons. There comes a point where too much information confuses rather than clarifies. Rather, what is required is that the summons served on the debtor contain a list of those essential federal and state exemptions that provide the basic necessities of life for someone in Mrs. Harris' position. The Social Security exemption certainly should be included; such benefits provide the bare necessities for many in our society. Beyond this list of absolutely essential exemptions such as Social Security benefits, the debtor should be informed simply that other possible exemptions from garnishment exist under the law. *See* Note, *Due Process, Postjudgment Garnishment, and "Brutal Need" Exemptions*, 1982 Duke L.J. 192, 209. Such a requirement balances the debtor's need for notice that exemptions exist with the very real danger

that information overload will only confuse the debtor.

Along with timely and adequate notice, due process mandates a hearing within a meaningful time. The Virginia statutory garnishment scheme provides no mandated expeditious hearing. Thus, the garnishment procedures stand as constitutionally defective in this third aspect. The defendant argues that Mrs. Harris could, and in fact did, move to quash the garnishment summons. The defendant suggests that Mrs. Harris was entitled to such relief at any time after the notice of garnishment was served. *See* Va.Code 8.01–477; 8A Michie's Jurisprudence of Virginia and West Virginia, *Executions* §§ 60–67 (1977). Certainly, a judgment debtor in Mrs. Harris' position must have an opportunity to assert and adjudicate claims of exemption as promptly as possible after the garnishment. The court finds that the relief available to the debtor by way of a motion to quash is not adequate. A few days delay in the adjudication of the exemption claim of a debtor in the position of Mrs. Harris may well cause severe harm. Too much uncertainty is inherent in the relief recommended by the defendant. No time limit is imposed on the determination of the validity of a claim of exemption. The debtor has no assurances whatsoever of a prompt hearing. Indeed, as noted above, the statute contains no provisions on *when* the debtor is to be served with notice of the garnishment. Thus, delays in the opportunity for a post-seizure hearing are manifest. The court notes that in Mrs. Harris' case, she did not move to quash until three months after the garnishment. Furthermore, even once she moved to quash, a hearing was not set for another six weeks. The requirement of a prompt post-seizure hearing, within a mandated period of time, will help ensure that the exemption issue will be decided before any hardship results from the deprivation.

### B. Supremacy Clause

■ Mrs. Harris contends additionally that the garnishment provisions stand "as an obstacle to the accomplishment and exe-

cution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Thus, she claims that the provisions are invalid under the supremacy clause because they conflict with the Social Security Act exemption. As *Finberg* discussed in identical circumstances, the test whether a state law violates the supremacy clause requires the court to examine first the purposes of the federal law and second the effect of the operation of the state law on these purposes. *See Finberg,* 634 F.2d at 63 (construing *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971)).

■ Indisputably, it is illegal to garnishee funds which are clearly identified as Social Security proceeds. 42 U.S.C. § 407 provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

In *United States v. Silk,* 331 U.S. 704, 711, 67 S.Ct. 1463, 1467, 91 L.Ed. 1757 (1947), the Court enunciated the congressional intent behind the Social Security Act as "the protection of its beneficiaries from some of the hardships of existence". The exemption of these benefits furthers this objective by insuring that a beneficiary has uninterrupted use of the benefits. *See Finberg,* 634 F.2d at 63.

Virginia's garnishment procedures provided the Hospital with a means of circumventing the federal exemption provided in 42 U.S.C. § 407. These procedures permitted the Hospital, as a judgment creditor, to freeze Mrs. Harris' bank account without regard to whether it contained social security funds; Mrs. Harris was thereby prevented access to the benefits for a full five months.

The Commonwealth asserts that the relief available to a debtor in Mrs. Harris'

circumstances, allowing the debtor to move to quash the garnishment, minimizes any conflict between the state law and the federal exemption. As noted earlier, however, the inadequate notice fails to alert the debtor that possible exemptions exist; moreover, the lack of an expeditious post-seizure hearing means that a debtor may well be denied access to the exempt benefits for a long period of time. As the court found in *Finberg* with regard to Pennsylvania's procedures, this court finds that Virginia's post-judgment garnishment provisions thus stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress". *Finberg,* 634 F.2d at 63, quoting *Hines,* 312 U.S. at 67, 61 S.Ct. at 404. The provisions are consequently invalid under the supremacy clause.

## IV. CONCLUSION

The Commonwealth's motion for summary judgment shall be denied. Mrs. Harris' motion for summary judgment shall be granted. The court will enter an appropriate Order granting Mrs. Harris' requested declaratory and injunctive relief.