**Rose DIONNE, on behalf of herself and all others similarly situated**

v.

**Gerard BOULEY, individually and in his capacity as Chief Clerk of the District Courts of the State of Rhode Island.**

Civ. A. No. 82–0602 P.

United States District Court, D. Rhode Island.

March 23, 1984.

Addendum Opinion and Order April 13, 1984.

John W. Dineen, R.I. Legal Services, Andrew S. Richardson, Providence, R.I., for plaintiff.

Madeline Quirk, Providence, R.I., for defendant.

## OPINION AND ORDER

PETTINE, Senior District Judge.

In this case Plaintiff challenges the validity of R.I.Gen.Laws §§ 10–5–2, 9–25–12, and 9–28–1 (1969 reenactment & 1983 supp.) and state District Court Rule 4(j)(2) (1976 ed.) [1] as violative of her right to pro-

---

1. R.I.Gen.Laws § 10–5–2 provides:

A court having jurisdiction over a defendant or his assets, including his personal estate or real estate, may authorize a plaintiff to attach same, or any part thereof, after hearing on a motion to attach, notice of which has been given to the defendant as herein provided. At the time of the commencement of the action, or at any time thereafter, a plaintiff must file a motion in said court for authority to attach said defendant's assets, including his personal or real estate, and the said motion must state the day, time and place of hearing and a copy must be served by the process server on the defendant or by leaving it at his last and usual place of abode with some person there at least five (5) days before the fixed date of hearing. If the defendant does not reside in the state of Rhode Island service of said motion shall be made upon him by mailing a copy of the said motion to attach, by certified mail, to his last known address and if service is made in this manner the plaintiff or his attorney must attach the sender's receipt to an affidavit of compliance with this section by the plaintiff or his attorney and filing it with the case in said court.

If the plaintiff after diligent search and by affidavit avers that he does not know of the defendant's address, service on the defendant of the motion to attach may after order of the court be made by publication in some public newspaper, once, published in the town, city or county where the said defendant's assets are situated. If there be no public newspaper published in the town, city or county where the defendant's assets are situated then in some public newspaper published in the city of Providence.

*In all actions where the plaintiff's claim against the defendant has been reduced to a judgment, the defendant's assets, including his personal estate and real estate, may be attached without any further hearing by the court or notice to the defendant.*
(emphasis added).

R.I.Gen.Laws § 9–25–12 provides:

In every execution issued against any defendant in an action or suit in which another person shall have been charged as the trustee of such defendant, there shall be inserted next after the words "goods and chattels and real estate of the defendant," the words following, namely, "and especially the personal estate of the said defendant in the hands or possession of (here insert the name of the trustee) charged as trustee of the said defendant to the extent of (here insert the amount for which the trustee is charged)"; or if the trustee shall be charged by his default in not filing the necessary affidavit in said cause, insert in lieu of the clause fixing the extent to which such trustee shall be charged, the following, after

cedural due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. These laws pertain to Rhode Island's procedures for issuing writs of attachment to judgment creditors, as explained below. Plaintiff, who has filed her suit pursuant to 42 U.S.C. § 1983, seeks both a declaratory judgment that the statutes and rule cited are unconstitutional and a permanent injunction against Defendant ordering him to stop issuing writs of attachment "pursuant to the existing forms and procedures."[2] Plaintiff has now moved for summary judgment under Fed.R.Civ.P. 56. For the reasons explained below, Plaintiff's motion is granted.

The central issue in this case is whether the Rhode Island procedures set out above at note 1 adequately protect Plaintiff's statutory right to exempt certain property from postjudgment seizure by a creditor. As the Court will explain *infra*, the constitutional adequacy of procedures relating to the *pre*judgment seizure of a debtor's property has been analyzed thoroughly by the Supreme Court in a series of opinions dating from 1969. Indeed, in 1972 this Court found the precursor of one of the Rhode Island statutes at stake in this case to be unconstitutional as violative of the debtor's right to procedural due process. *See McClellan v. Commercial Credit Corp.,* 350 F.Supp. 1013 (D.R.I.1972), *aff'd,* 409 U.S. 1120, 93 S.Ct. 935, 35 L.Ed.2d 253 (1973).

The parties have agreed to a statement of undisputed facts, from which the Court gleans the following scenario. In July, 1982, a creditor obtained a judgment in state court for $550.00 against the Plaintiff in this action. Pursuant to the judgment, an execution was issued against Plaintiff, but, approximately two weeks later, the execution was returned to the state court marked "unsatisfied." The judgment creditor than obtained from the clerk of the state court a writ of attachment form and served the writ on Plaintiff's bank. The result of this service was that as of August 13, 1982 Plaintiff's checking account was "frozen" and rendered inaccessible to her. On August 17, 1982, Plaintiff was served with process in a "debt on judgment" action filed by the judgment creditor pursuant to R.I.Gen.Laws § 9–28–1. This second suit sought another money judgment in the amount of $551.80 plus costs of $50.00. On the same day, Plaintiff received notice from her bank that one of her checks had been returned for insufficient funds and that the bank was imposing a $5.00 service charge for the check's return. In response to the notice, Plaintiff contacted her bank and learned for the first time that the funds in her checking account had been frozen in accordance with the writ of attachment.

The checking account contained $601.00 at the time of attachment, most of which consisted of Social Security benefits paid to her and her four minor children, with a small portion of the account being attributable to Plaintiff's wages. Also at the time of the attachment, Plaintiff was unaware of, and was not provided with notice of,

the words "charged as trustee of the said defendant," namely, "by the default of the said trustee to file his affidavit in said cause."

R.I.Gen.Laws § 9–28–1 provides:
Any judgment creditor, after his execution has been returned wholly or in part unsatisfied, may by a civil action in the nature of a creditor's bill reach and apply and subject to the payment and satisfaction of his judgment any equitable estate, any equitable assets or any choses in action of the judgment debtor, except such as shall be exempt from attachment by virtue of statutory provision. The remedy provided by this section shall be cumulative and shall not supersede any existing remedy.

State District Court Rule 4(j)(2) provides:
The writ of attachment shall bear the signature or facsimile signature of the clerk, be under seal of the court, contain the name of the court, the names and residences of the parties and the trustee, if any, and the date of the commencement of the action, be directed to the sheriff of the county or his deputies, or to either of the town sergeants or constables in such county, and command them to attach the goods or estate of the defendant to the value of the amount of the plaintiff's demand for judgment, together with a reasonable allowance for interests and costs, and to make due return of their doings thereon.

2. Plaintiff's earlier motion to certify this case as a class action was denied by this Court in a Memorandum and Order filed March 18, 1983.

any procedures through which she could challenge the attachment or raise a claim that some or all of the property was exempt from attachment.

The parties have also stipulated to the following facts:

(1) At all times relevant to this litigation, Plaintiff was responsible for the support of herself and her children.

(2) At all times relevant to this litigation, Plaintiff's sole income was as follows:

(a) Social Security Benefits for children—$465 per month.

(b) Social Security Widow's Benefits—$125 per month.

(c) Plaintiff's wages after mandatory deductions—$100 bi-weekly.

(3) It is the current practice to serve the writ of attachment on the "trustee" (i.e., bank, employer), and no motion to attach is required.

(4) There is no required hearing or notice of any possible hearing, either before or after the writ of attachment is issued and served.

(5) There is no notice to the judgment debtor of any possible defenses or exemption claims.

(6) It has been the practice of the state District Courts to issue blank writs of attachment upon request, with the name of the clerk and the seal already affixed, to creditors or their attorneys.

(7) Plaintiff is a person of very low income who will continue to be subject to the procedures and form challenged in this action.

(8) Subsequent to the attachment of her account, Plaintiff has now recovered the use of the account, the attachment having been released.

As stated above, Plaintiff requests a declaratory judgment that the procedures and forms used by Defendant and R.I.Gen. Laws §§ 10–5–2, 9–25–12, 9–28–1 and District Court Rule 4(j)(2) are unconstitutional. Plaintiff also asks this Court to enjoin Defendant permanently from issuing any further writs of attachment pursuant to the existing forms and procedures.

Before reaching the merits of the motion, the Court must respond to several preliminary arguments made by Defendant. The first is that "[t]his Court should invoke the principles of abstention and comity and decline to consider [Plaintiff's] claims in the absence of state law on this question." (The Court assumes that here Defendant refers to the lack of any Rhode Island state court decision involving the constitutionality of the attachment procedures discussed above.) In rather cursory fashion Defendant invokes all three varieties of federal court abstention. Citing *Calkins v. Blum*, 511 F.Supp. 1073 (N.D.N.Y.1981), *aff'd*, 675 F.2d 44 (2d Cir.1982), Defendant states correctly that "[a]bstention may be proper in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." As his citation to *Calkins* makes clear, Defendant here seeks this Court's invocation of abstention pursuant to *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

In responding to this request for abstention, the Court notes first that "abstention by a federal court from the exercise of its proper jurisdiction 'is the exception, not the rule.'" *Santasucci v. Gallen*, 607 F.2d 527, 528 (1st Cir.1979) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). With reference to *Pullman* abstention specifically, it is clear that such abstention is appropriate only if the state law is ambiguous in some material way.

Crucial to the abstention decision ... is the ambiguity of the state statute. A clearly-worded law leaves even the most constitutionally-sensitive state court little room to maneuver its way to a saving construction. Remand under such circumstances serves no purpose of comity; it wastes the plaintiff's, the defendant's and the state court's time, and causes unseemly delay in the federal court adjudication.

*Moe v. Dinkins*, 635 F.2d 1045, 1048 (2d Cir.1980), *cert. denied sub nom. Axelrod v. Coe*, 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982).

*See Juidice v. Vail,* 430 U.S. 327, 341, 97 S.Ct. 1211, 1220, 51 L.Ed.2d 376 (1977) (Stevens, J., concurring). Although in this case Defendant suggests that "a state court determination of pertinent state law" might moot the constitutional issue now before the Court, Defendant does not identify the ambiguity it finds in these statutes from which a state court could fashion such a construction. Indeed, the Court finds the relevant statutes to be admirably free of ambiguity. *See supra* note 1. *Pullman* abstention is, therefore, inappropriate in this case.

In an attempt to invoke abstention under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), Defendant argues that "[t]he doctrine may also be invoked in cases that present typical questions of state law bearing [on] policy problems of substantial public import whose importance transcends the results in the instant case." In support of this proposition, Defendant again cites *Calkins v. Blum. Calkins,* however, characterizes the questions of state law appropriate for *Burford* abstention not as "typical" but as "difficult." 511 F.Supp. at 1086 (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244). Indeed, the fear that a federal court's interference with a *complex and elaborate* state statutory "system" would have an impermissibly disruptive effect on a "matter of substantial public concern" is at the heart of *Burford* abstention. *See Colorado River,* 424 U.S. at 814–815, 96 S.Ct. at 1244–45. In this case, the Court faces no such difficult questions of state law, as explained above. Therefore, *Burford* abstention is also inappropriate. *See Board of Education v. Bosworth,* 713 F.2d 1316, 1320 (7th Cir.1983).

Finally, Defendant requests that this Court abstain from ruling in this case in accordance with *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. While it is true that in recent years the *Younger* doctrine has enjoyed some degree of expansion beyond its original context, *see, e.g., Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982), its invocation apparently remains limited to situations involving pending state judicial proceedings. *See id. See also Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974) (explaining that *Younger*'s principles of "equity, comity, and federalism" have little force in the absence of a pending state proceeding). There is no ongoing state proceeding in this case. Therefore, *Younger* abstention is also inappropriate.

*Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) is not to the contrary. In *Juidice,* the appellees, following their failure to satisfy judgments against them in various civil actions in the state courts, were held in contempt, fined, and imprisoned for disobeying subpoenas to appear in supplemental proceedings brought by the judgment creditors in an attempt to collect the judgments. In the federal district court, appellees obtained an injunction against the statutorily authorized contempt proceedings on federal constitutional grounds not raised in the state proceedings. The Supreme Court reversed, holding that the district court should have abstained from hearing the case. The Court stated that it was "abundantly clear that appellees had an *opportunity* to present their federal claims in the state proceedings. No more is required to invoke *Younger* abstention." 430 U.S. at 337, 97 S.Ct. at 1218 (emphasis in original) (footnote omitted). The crucial distinction between *Juidice* and the instant case is obvious: Here, Plaintiff had no such opportunity to present her federal claims because there was no proceeding whatsoever to which she was a party. In short, *Juidice* presents no bar to this action. Accordingly, the Court concludes that none of the bases for abstention asserted by Defendant are appropriate in this case. This conclusion is reached with full cognizance of the " 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.' " *City of Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) (quoting *Stefanelli v. Minard,* 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138 (1951)).

■ Defendant next argues that exercise of this Court's judicial power in this case is improper because the parties are without sufficiently adverse interests to meet the "case or controversy" require-

ment of both the Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201. In support of this basic principle Defendant cites *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."). Defendant's rationale on this point is not clear to the Court. He asserts that he "fails to have sufficient interest at stake in the outcome of this litigation to permit a finding of an actual controversy," but he provides not one word of explanation as to why this is so. The argument, such as it is, is without merit. To paraphrase one part of the Third Circuit's decision in *Finberg v. Sullivan,* 634 F.2d 50 (3rd Cir.1980) (en banc), since Defendant has in fact relied on the authority conferred by the Rhode Island statutes and rule to work an injury to Plaintiff, he may not disclaim interest in the constitutionality of these laws. To do so would be inconsistent with his obligation to respect the constitutional rights of citizens. *Id.* at 54 (citing *Mattis v. Schnarr,* 502 F.2d 588, 595–96 (8th Cir.1974)). Furthermore, the Court notes that Defendant in this case is represented by the state attorney general's office; one is hard pressed to think of a more appropriate defender of the constitutionality of a state statute. Indeed, the presence of the state attorney general would apparently render the parties sufficiently adversarial in nature even under Judge Aldisert's rationale in his strong dissent in *Finberg. See* 634 F.2d at 65.

Defendant also argues that the "case or controversy" requirement is not met because the case is moot. Here Defendant relies on *Ashcroft v. Mattis,* 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977), which held that "there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts' " in order for a declaratory judgment to issue. *Id.* at 172, 97 S.Ct. at 1740 (quoting *Aetna Life Insurance,* 300 U.S. at 242, 57 S.Ct. at 465). *See also Shell Oil Co. v. Noel,* 608 F.2d 208, 213 (1st Cir.1979). It is true, as noted above, that the parties have stipulated that "Plaintiff has now recovered the use of [her bank] account, the attachment having been released." This turn of events raises the same question of mootness faced

by the Third Circuit in *Finberg.* There the court stated:

> [W]e must decide whether the controversy became moot when [the plaintiff in an action challenging the constitutionality of a state postjudgment garnishment statute] recovered all of the money that had been attached. This event removed [the plaintiff's] immediate personal stake in a declaration of the unconstitutionality of the application of the garnishment procedures. A finding of mootness normally would follow.
>
> However, mootness is not the result in cases challenging "short term orders, capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). To avoid mootness on this ground, a complaining party must demonstrate a "reasonable expectation" that he will be subject to a recurrence of the activity that he challenges. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam). He also must show that the activity is "by its very nature" short in duration, "so that it could not, or probably would not, be able to be adjudicated while fully 'live.' " *Dow Chemical Co. v. EPA,* 605 F.2d 673, 678 n. 12 (3d Cir. 1979).

*Finberg,* 634 F.2d at 55.

*See Loeterman v. Town of Brookline,* 709 F.2d 116, 118 (1st Cir.1983).

In this case, the parties have stipulated that Plaintiff "is a person of very low income who will continue to be subject to the procedures and form challenged in this action," as noted above. Clearly, this stipulation meets the requirement that the complaining party has a "reasonable expectation" that she will be subject to a recurrence of the challenged practice. *Compare City of Los Angeles v. Lyons,* 103 S.Ct. at 1667–69 (fact that the plaintiff allegedly had been choked into unconsciousness by police, while presumably affording him standing to claim damages against individual officers and perhaps the city, did not establish real and immediate threat that such conduct would recur; failure to establish this threat resulted in lack of requisite case or controversy). Furthermore, one can easily infer from the stipulated facts that Rhode Island's postjudgment attach-

ment procedure is " 'by its very nature' short in duration." Under these facts, "[t]he general rule that denies judicial review when the principal cause of action becomes moot, therefore, does not apply." *See Harris v. Bailey,* 675 F.2d 614, 616 (4th Cir.1982) (*Harris I*). Accordingly, the Court concludes that the case or controversy requirement of the Constitution and the Declaratory Judgment Act has been met in this case.

 Having disposed of Defendant's preliminary arguments, the Court now turns to the merits of Plaintiff's claim. It is undisputed that the bulk of the funds that were attached by the judgment creditor were supposed to have been protected from attachment [3] under 42 U.S.C.A. § 407 (1983), a provision of the Social Security Act, which states:

(a) Inalienability of right to future payments

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and *none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process,* or to the operation of any bankruptcy or insolvency law.

(b) Inamendability of section by inference

No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section. (emphasis added).

*Philpott v. Essex County Welfare Board,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), makes clear that this statute applies to Social Security benefits deposited in a bank account.[4] As explained above in more general terms, the central issue in this case is whether Rhode Island's procedures adequately protect Plaintiff's right under 42 U.S.C.A. § 407 to exempt her social security payments from post-judgment seizure by a creditor. The Court notes that during the past four years several other federal courts have considered the constitutionality of postjudgment attachment procedures similar to Rhode Island's. See, for example, *Finberg,* 634 F.2d 50; *Harris v. Bailey,* 574 F.Supp. 966 (W.D.Va. 1983) (*Harris II*); *Phillips v. Robinson Jewelers, Inc.,* No. CIV–81–190, slip op. (W.D.Okl. Feb. 15, 1983); and *Deary v. Guardian Loan Co.,* 534 F.Supp. 1178 (S.D.N.Y.1982), all of which found the state postjudgment enforcement procedures before them to be unconstitutional. The three district court cases, like the instant case, were decided on motions for summary judgment. *But see Brown v. Liberty Loan Corp.,* 539 F.2d 1355 (5th Cir.1976), *cert. denied,* 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977) (upholding Florida's postjudgment garnishment statute as constitutional).

Each of the four cases cited in the previous paragraph that found the postjudgment attachment procedures to be constitutionally inadequate engages in essentially the same analysis of the four relevant Supreme Court opinions, *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), all of which examined the constitutionality of various *pre*judgment attachment statutes. Although it has been argued that the rationales of these four opinions by the Supreme Court are somewhat inconsistent with one

---

**3.** As Plaintiff has noted in her brief, "attachment" and "garnishment" are sometimes used interchangeably, as they are in much of this opinion. Properly speaking, however, "[t]he term 'garnishment' refers to the process of execution against property held by someone other than the debtor. 'Attachment' refers to the seizure imposed on property held by a garnishee at the beginning of the garnishment process." *Finberg v. Sullivan,* 634 F.2d at 52 n. 1.

**4.** Plaintiff also argues that those funds in her checking account at the time of attachment that were attributable to her wages were also protected from attachment pursuant to 15 U.S.C.A. § 1673 (1982). The Court believes, however, that consideration of this argument is unnecessary to a disposition of the motion for summary judgment.

another, *see* Comment, *Due Process, Post-judgment Garnishment, and "Brutal Need" Exemptions,* 1982 Duke L.J. 192, 195–99, it is nevertheless quite plain that the cases "stand for the proposition that, with regard to prejudgment provisional remedies, due process in all but extraordinary situations requires prior notice to the debtor and a prompt opportunity to be heard." *Harris II,* 574 F.Supp. at 968. The question here, obviously enough, is whether this proposition applies to post-judgment attachments as well.

Sixty years ago, the Supreme Court held that the proposition did *not* so apply, explaining that

> the established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take "notice of what will follow," no further notice being "necessary to advance justice."

*Endicott-Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285, 288, 45 S.Ct. 61, 62–63, 69 L.Ed. 288 (1924).

Not surprisingly, Defendant maintains that *Endicott-Johnson* is controlling precedent in this case. In support of his belief in the "continued vitality" of the opinion, he cites (but does not analyze) *Mitchell v. W.T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406; *Brown v. Liberty Loan Corp.,* 539 F.2d 1355 (5th Cir.1976); *Betts v. Coltes,* 467 F.Supp. 544 (D.Haw.1979); *Langford v. Tennessee,* 356 F.Supp. 1163 (W.D.Tenn.1973); and *Moya v. DeBaca,* 286 F.Supp. 606 (D.N.M.1968), *appeal dismissed,* 395 U.S. 825, 89 S.Ct. 2136, 23 L.Ed.2d 740 (1969). Upon close examination, however, one notes that, with the exception of *Langford v. Tennessee,* none of these cases provide any significant support for Defendant's position. *Moya v. DeBaca* preceded the four relevant Supreme Court

cases. *Betts v. Coltes,* which held that a Hawaii statute passed "federal Constitutional tests for procedural due process insofar as it permit[ted] the post-judgment garnishment of wages without prior notice or hearing accorded to the judgment debtor," 467 F.Supp. at 546, is hardly persuasive in light of the Ninth Circuit's subsequent determination that the district court had possessed "no power to pass on the constitutionality of the garnishment statute as it applies to social security recipients." *Betts v. Reliable Collection Agency, Ltd.,* 659 F.2d 1000, 1006 (9th Cir.1981).

Defendant's reliance on *Brown v. Liberty Loan Corp.* is somewhat more problematic in that *Brown* does indicate a certain "continued vitality" for *Endicott-Johnson. See* 539 F.2d at 1363–65. *Brown* upheld the Florida garnishment statutes as constitutional even though they require neither notice to the debtor nor an opportunity for a hearing prior to the garnishment. *Id.* at 1357. A prompt postseizure hearing is available, however, at which the debtor can press an exemption claim, a provision the Fifth Circuit characterized as "the most significant factor" behind its ruling that the garnishment scheme was constitutionally adequate. *Id.* at 1368. To say, however, that *Brown* restored the vitality that *Endicott-Johnson* may have enjoyed before 1969 is an exaggeration. Even *Brown* tipped its hat to the four Supreme Court cases noted above:

> The instant case ... cannot be decided on the ground that the creditor's right to satisfaction of a judgment out of the debtor's assets is merely "confirmed" by the issuance of a writ of garnishment without further notice to the debtor. More recent decisions of the Supreme Court establish the need to balance various interests in order to determine whether due process requires notice and an opportunity for a hearing whenever an individual is to be deprived of property permanently or temporarily. See [*North Georgia Finishing, Mitchell v. W.T. Grant, Fuentes v. Shevin,* and *Sniadach* ].
> 539 F.2d at 1365.

The result in *Brown* may have resembled that in *Endicott-Johnson,* but the rationale leaves the older case resting under a layer of fine dust.

Defendant's citation of *Mitchell v. W.T. Grant* as evidence of *Endicott-Johnson*'s present viability is similarly off the mark. *Mitchell* requires the same sort of balancing of interests as do the other Supreme Court cases in this group. *See* 416 U.S. at 604–05, 94 S.Ct. at 1898–99. As for *Langford v. Tennessee,* which distinguished away *Sniadach* and *Fuentes* in favor of following *Endicott-Johnson, see* 356 F.Supp. at 1164, it should be clear by this point that this Court believes *Langford* is simply wrong. *See Recent Cases: Due Process Requires Notice of Exemptions and a Prompt Postseizure Hearing for Postjudgment Garnishment,* 46 Mo.L.Rev. 857, 860–62 (1981) (cited hereinafter as *"Casenote")* ("The best analysis of *Endicott-Johnson* is not to attempt to distinguish it, but rather to question its validity directly on the ground that the Court there did not use the modern balancing approach of the *Sniadach* series."); Alderman, *Default Judgments and Postjudgment Remedies Meet the Constitution: Effectuating* Sniadach *and Its Progeny,* 65 Geo.L.J. 1, 12–17 (1976) (concluding that *Endicott-Johnson* "is no longer the applicable standard" by which to examine postjudgment remedies).

As might be anticipated from the above, the Court's next task is to determine the respective interests of creditor and debtor that are implicated by Rhode Island's attachment scheme. As the Supreme Court explained in the now-familiar language of *Mathews v. Eldridge:*

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
> 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).[5]

*See also Mitchell,* 416 U.S. at 604, 94 S.Ct. at 1898 ("Resolution of the due process question must take account not only of the interests of the buyer of the property but those of the seller as well.").

In this context, of course, there are two sets of private interests affected by the Rhode Island laws: those of the creditor and those of the debtor. The Court notes that "[s]imply because the property deprivation occurs after judgment does not eliminate the need for a balancing analysis." *Casenote, supra,* 46 Mo.L.Rev. at 862. The opinion in *Deary v. Guardian Loan Co.* explains why this is so:

> While the fact that in this case the creditors had obtained a judgment on their claims of indebtedness may alter the weight of the competing interests from those considered in pre-judgment cases, it cannot alter the method to be utilized in determining the procedural protections applicable in the enforcement context. The judgment reflects only the vindication of the creditor's claim of the debt owed, not the right to use any particular procedure or to satisfy the judgment with any particular property. "A debtor might still defeat [the creditor's] right with any of a number of defenses not adjudicated in the action on the merits, such as in the present case with a claim of exemption." *Finberg,* [634 F.2d] at 58. Accordingly, as in the pre-judgment cases, the post-judgment enforcement actions must be considered as "provisional" measures during which the judgment

**5.** The Court acknowledges that, strictly speaking, the *Mathews* test exists for the purpose of balancing private interests against the government's interest, not for balancing two sets of private interests against one another. In this context, however, it seems safe to assume that the governmental interest manifested in the statutory scheme is to facilitate execution by judgment creditors, although there is no published state court decision discussing this point. In other words, the governmental interest is the same as that of the judgment creditor. Viewed in this light, discussion of the debtor's versus the creditor's interests in the context of the *Mathews* test is not inappropriate. *See Finberg,* 634 F.2d at 58; Comment, *supra,* 1982 Duke L.J. at 199–201.

debtor retains a protectible interest in the property until it is determined to be legally available in satisfaction of the judgment.

534 F.Supp. at 1186. *See Harris II*, 574 F.Supp. at 969.

This particular balancing of interests is not new territory. And, as other courts have noted, the creditor's interest is certainly substantial:

The fact that the creditor has obtained a judgment establishing the monetary liability of the debtor gives it a strong interest in a prompt and inexpensive satisfaction of the debt. The creditor has the right to seek recovery from the debtor or the debtor's property. Additional delay and expense can diminish the value of its ultimate recovery.

Another distinctive fact of this case is the type of property seized: the bank accounts of an individual. The ability to seize monetary assets advances the creditor's interests because an execution on such assets generally is faster and less expensive than a levy and judicial sale of nonmonetary assets.

*Finberg*, 634 F.2d at 58.

*See Brown*, 539 F.2d at 1366; *Deary v. Guardian Loan Co.*, 534 F.Supp. at 1186.[6] On the other hand, as the *Finberg* court explained,

the debtor's interests also assume greater weight in a seizure of an individual's bank accounts. A bank account may well contain the money that a person needs for food, shelter, health care, and other basic requirements of life. Many people have no other immediate sources of money. Additional income from a future paycheck, welfare benefit, or other source may not be available for two weeks or more, and that income may be insufficient to meet the person's immediate needs. When we consider the additional fact that the money in the accounts may, as here, be covered by exemptions designed to protect a debtor's means of purchasing basic necessities, the debtor's interest in access to a bank account becomes very compelling.

634 F.2d at 58.

*See Deary*, 534 F.Supp. at 1186. This Court views both the creditor's and the debtor's interests in this case to be quite important. On balance, however, those of the debtor seem more significant, at least under the stipulated facts of this case. Striking this balance also appears to follow the weight of authority, although each authority must be viewed in its own factual context. *See Finberg*, 634 F.2d at 58–62; *Harris II*, 574 F.Supp. at 969; *Deary*, 534 F.Supp. at 1186–88. The first part of the *Mathews v. Eldridge* test, then, suggests an outcome favorable to the plaintiff/debtor.

*Mathews v. Eldridge* next requires the Court to determine "the risk of an erroneous deprivation of [Plaintiff's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335, 96 S.Ct. at 903. It is the Court's view that the greatest "risk of an erroneous deprivation" presented by the Rhode Island statutory scheme is that, as the parties stipulated, "[t]here is no notice to the judgment debtor of any possible defenses or exemption claims." Indeed, it is apparent to the Court that there is no required notice of the attachment at all. *See* discussion of stipulated facts, *supra*. And as the facts of this case demonstrate so well, this lack of notice may prevent the debtor from even attempting to forestall a deprivation that, under 42 U.S.C.A. § 407, is clearly erroneous. The risk with which *Mathews v. Eldridge* is concerned, then, is very high when no notice of the attachment is required. Furthermore, the debtor's interest here is more important than the one involved in *Brown v. Liberty Loan Co.*, since the plaintiff in *Brown* "would not have been deprived of his whole paycheck, but only a small portion of it" and "would still have some assets to provide for his basic needs." Comment, *supra*, 1982 Duke L.J. at 203 (citing *Brown*, 539 F.2d at 1367 n. 12).

The risk of an erroneous deprivation is almost as great when the debtor fails to receive notice of possible defenses or exemption claims. Defendant, not surprisingly, argues that this sort of notice is simply not constitutionally required. The theory

---

**6.** The Court notes that Defendant in this case has not suggested any additional creditor's inter- ests for the Court's consideration.

is that the judgment itself serves adequately as constructive notice. *See* Defendant's Memorandum at 5. The Court finds that it cannot improve upon the *Deary* opinion's response to this sort of argument and quotes it at length:

> Defendants' argument that the notices were nevertheless sufficient because due process does not require that a debtor be informed of particular grounds or procedures for challenging the action is substantially undercut by the Supreme Court's holding in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978). In *Memphis* the Court held that a notice of termination of utility service was constitutionally inadequate because it did not advise the customer of the availability of a procedure for contesting the proposed termination. " 'An elementary and fundamental requirement of due process ... is notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 13, 98 S.Ct. at 1562, quoting *Mullane v. Central Hanover Trust Co.* [, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ]. As in *Memphis*, restraint and execution procedures can be expected to be taken against people of "various levels of education, experience, and resources." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. at 14 n. 15, 98 S.Ct. at 1562 n. 15. Requiring only that such persons be informed of the action taken or contemplated, as defendants urge, reflects a "restrictive view of the process due in the context of this case [which] would erect an artificial barrier between the notice and hearing components of the constitutional guarantee of due process." *Id.* And, just as the customers in *Memphis* were entitled to notice of the procedures for challenging termination, judgment debtors in the context of this case are entitled to notice of both the exemptions to which they may be entitled and the procedures for asserting those exemptions. As the *Finberg* court observed:

> > "Knowledge of these exemptions is not widespread, and a judgment debtor may not be able to consult a lawyer before the freeze on a bank account begins to cause serious hardships. These problems are probably most acute for those judgment debtors who have few immediate sources of necessary funds other than money held in a bank account. Notice of these matters can prevent serious, undue hardship for the judgment debtor whose lack of information otherwise would cause delay or neglect in filing a claim of exemption." 634 F.2d at 62.

> 534 F.Supp. at 1187–88.

*Accord, Phillips v. Robinson Jewelers, Inc.,* No. CIV–81–190, slip op. at 14–16 (W.D.Okl. Feb. 15, 1983).

Defendant apparently would argue that the procedure outlined in R.I.Gen.Laws § 9–21–2 (1969 reenactment),[7] which he says "permits a garnishee to sue to recover for garnishment of exempt funds," Defendant's Memorandum at 7, reduces the "risk of an erroneous deprivation" to a constitutionally acceptable level. It is true that § 9–21–2 provides for relief from a state court "order, decree, or proceeding" for any reason justifying such relief. *See supra* note 7. And it seems safe to assume that an attachment of property exempt under a federal statute, as in this case, would qualify as a reason for relief under § 9–21–2(6). *Cf. Pasquazzi v. Pasquazzi*, 119 R.I. 554, 555, 381 A.2d 233, 233 (1977) ("Relief

---

**7.** R.I.Gen.Laws § 9–21–2 (1969 Reenactment) states:

> On motion and upon such terms as are just, a court may relieve a party or his legal representative from a final judgment, order, decree, or proceeding entered therein for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence, could not have been discovered in time to move for a new trial under applicable law; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time and not more than one (1) year after the judgment, order, or proceeding was entered or taken.

from a judgment, order or decree under that section rests in the sound judicial discretion of the court guided by accepted legal principles."). Nevertheless, the Court must turn once again to the *Deary* opinion (with an appropriate substitution):

> Without notice of their possible exemptions, the enforcement action taken or contemplated, and the [§ 9–21–2] procedures themselves, judgment debtors in this context are likely not to know that any relief may be available. Meanwhile they may be deprived of the use of the property despite the theoretical availability of relief. Thus, at least without appropriate notice, the provision of post-enforcement remedies cannot satisfy constitutional requirements.
>
> 534 F.Supp. at 1188.

■ R.I.Gen.Laws § 9–21–2 also fails to reduce the "risk of an erroneous deprivation" to an acceptable level because it does not provide for an *expeditious* proceeding in which the debtor may sue to recover exempt funds. As the Supreme Court recently reiterated, "[t]he fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted *at a meaningful time* and in a meaningful manner.'" *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1918, 68 L.Ed.2d 420 (1981) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)) (emphasis supplied). Because a central concern in this case is "those judgment debtors who have few immediate sources of necessary funds other than money held in a bank account," *Finberg,* 634 F.2d at 62, it is clear that, in order for these debtors' opportunity to be heard to be constitutionally meaningful, that opportunity must be afforded shortly after the attachment. R.I. Gen.Laws § 9–21–2 does not guarantee such an opportunity, so its power to reduce "the risk of an erroneous deprivation" within the meaning of *Mathews v. Eldridge* cannot be taken very seriously. In short, in the required balancing of interests under *Mathews v. Eldridge,* this factor, too, suggests the constitutional inadequacy of Rhode Island's statutory scheme.

As should be plain from the above, certain "additional or substitute procedural safeguards" for postjudgment attachment of a debtor's bank account appear to have a substantial "probable value" in decreasing the "risk of an erroneous deprivation." Timely notice of the attachment itself, for example, might have made a difference in the length of time that Plaintiff in this case was deprived of her exempt funds. *See Harris II,* 574 F.Supp. at 970 ("In order to meet the timely notice requirements of due process, the creditor should be required to provide the debtor with notice simultaneously with or within a reasonable time after the garnishment."). Notice of a possible exemption claim (in this case, based on 42 U.S.C.A. § 407) would be similarly fundamental to the avoidance of an erroneous deprivation, as would an opportunity to challenge the attachment promptly. *See. Deary,* 534 F.Supp. at 1188. The Court concludes, therefore, that these additional procedural safeguards would be of substantial value in decreasing the risk of an erroneous deprivation. Accordingly, this factor also bodes ill for the constitutionality of the Rhode Island postjudgment attachment procedures.

■ Finally, under *Mathews v. Eldridge* this Court must consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335, 96 S.Ct. at 903. It seems clear that the notices of attachment and a possible exemption claim "would not place a great burden on the state." *Finberg,* 634 F.2d at 62. *Accord, Phillips v. Robinson Jewelers, Inc., supra,* slip op. at 15–16. A significant burden, however, would be placed on the state judicial machinery by requiring that the procedures established by R.I.Gen.Laws § 9–21–2 be expedited. This Court does not take lightly the burdens faced by today's courts, state as well as federal. Nevertheless, the judgment debtor's interest can be very great, as discussed above, and § 9–21–2 contemplates much less than a full-scale trial. *See supra* note 7. At this point, it is probably obvious that, to outweigh the other factors of the *Mathews v. Eldridge* test (all of which are in the debtor's favor), the state government's interest would have to be quite strong. And strong it is in this case, but not strong enough. Accordingly, the Court holds that Rhode Island's statutory scheme of postjudgment attachment is unconstitutional under the due process clause

of the Fourteenth Amendment to the United States Constitution.[8]

Plaintiff also argues that the Rhode Island statutes and rule set out above at note 1 are in violation of the supremacy clause, U.S. Const. art. VI, cl. 2. The theory here is that the Rhode Island attachment procedures "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), since it is clear that the purpose of 42 U.S.C.A. § 407 is "to protect social security beneficiaries from creditors' claims," *Department of Health and Rehabilitative Services v. Davis,* 616 F.2d 828, 831 (5th Cir.1980), and the Rhode Island procedures allow this purpose to be defeated. This argument, too, has been made in suits challenging postjudgment attachment schemes, and the Court finds itself in agreement with the clear weight of authority on this point. The "net effect" of the procedures challenged here "is to bring about precisely the consequences that Congress sought to prevent." *Finberg,* 634 F.2d at 63. *Accord, Phillips v. Robinson Jewelers, Inc., supra.* slip op. at 16–17; *Harris II,* 574 F.Supp. at 971–72; *Deary,* 534 F.Supp. at 1188–89. The Court therefore holds the Rhode Island statutory scheme of postjudgment attachment to be unconstitutional as a violation of the supremacy clause as well.

In light of the above, Plaintiff's motion for summary judgment is granted, and Defendant is enjoined from issuing writs of attachment pursuant to the existing forms and procedures insofar as they are inconsistent with this opinion.

### ADDENDUM TO MARCH 23, 1984 OPINION AND ORDER

Defendant has moved pursuant to Fed.R. Civ.P. 62(c) to stay the judgment issued in this case pending his appeal. The criteria to be employed in deciding a motion under Rule 62(c) are as follows:

(1) whether the movant has demonstrated a strong showing of likelihood of success on the merits of the appeal; (2) whether the movant will suffer irrepara-

ble harm in the absence of the stay; (3) the degree to which a stay will substantially harm the other party; and (4) whether it is "in the public interest" to grant the stay.

*Instrumentalist Co. v. Marine Corps League,* 509 F.Supp. 323, 341 (N.D.Ill.1981), *aff'd,* 694 F.2d 145 (7th Cir.1982) (citing *Collin v. O'Malley,* 452 F.Supp. 577, 579 (N.D.Ill.1978), and 11 Wright & Miller, *Federal Practice and Procedure* § 2904 (1973)).

Defendant has not "established a strong showing of likelihood of success on the merits of the appeal." His memorandum in support of the motion fails to make any argument not made in his earlier memorandum in opposition to summary judgment. Indeed, he continues to rely on the *Endicott–Johnson* case, which for the reasons discussed in the March 23 opinion this Court declines to follow.

Defendant contends that "unless the stay is granted, irreparable harm will result to the entire Rhode Island state court system," and that "[t]his situation has and is causing irreparable harm to the entire population of this State." This Court believes that these assertions of irreparable harm are greatly exaggerated. The Court notes that Defendant's memorandum fails to argue that the State's judgment creditors will be irreparably harmed, although they constitute the group most likely to be injured by this Court's ruling. The Court, however, *has* taken the very considerable interests of the creditors into account, along with the interests of the judgment debtors. The Court has balanced those interests and arrived at the conclusion set out in the opinion, and Defendant has offered no new argument on this point. This same balance suggests that it would not be in the public interest to grant the stay. In short, Defendant has failed to satisfy any of the criteria for a granting of his Rule 62(c) motion. Accordingly, the motion is denied.

Defendant's memorandum suggests that he may have misinterpreted the scope of the March 23 opinion and that some clarification by this Court may be helpful. Nothing in the opinion states that *preattach-*

---

**8.** The Court is uncertain to what extent R.I.Gen. Laws § 9–25–12 plays a role in the attachment scheme. *See supra* note 1. Neither party has briefed this point to the Court, and the single published opinion involving the statute was issued in 1885. Because legislation is presumed to be constitutional, *see Williamson v. Lee Opti-*

*cal,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); *Wall & Ochs, Inc. v. Grasso,* 469 F.Supp. 1088, 1092 (D.Conn.1979), this Court declines to hold § 9–25–12 unconstitutional in the absence of any specific argument that the statute violates due process.

**320**

*ment* notice to the judgment debtor is necessary for a constitutional attachment procedure. "The principles established in the controlling Supreme Court decisions, to summarize, are that notice and an opportunity to be heard before an attachment are not absolutely necessary." *Finberg v. Sullivan,* 634 F.2d 50, 58 (3d Cir.1980).

Finally, the Court wishes to express its dismay at the generally shrill tone of Defendant's latest memorandum. Defendant appears to believe that this Court somehow slighted its duty by not rewriting the statutory attachment scheme so as to bring it in line with the requirements of due process. Mindful of the chorus of critics ready to find judicial meddling at every turn, the Court can respond only with chagrin to Defendant's obvious annoyance. This Court does not write and enact laws. The job of working out a constitutional attachment procedure is for the state legislature.